ISABELLA LANZILLOTTI *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

MAY 13, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is an action of trespass on the case for negligence, to recover for physical injuries received by the plaintiff, while riding as a passenger in a bus which was then being operated by an employee of the defendant, in the course of its business as a common carrier of passengers.

At the conclusion of all the evidence at a jury trial in the superior court the trial justice, on a motion by the defendant, directed a verdict in its favor; and the case is now before us on the plaintiff's bill of exceptions, in which the principal exception is to the granting of that motion.

174

The following facts were shown by uncontradicted evidence: At the time when the plaintiff was injured, about 5:30 p.m. on November 21, 1937, it was getting dark, the headlights of vehicles being lighted. The bus in which she was riding as a passenger was proceeding in a southerly direction along Plain street in the city of Providence. As the bus was crossing Blackstone street, which intersected Plain street at about a right angle, and the front of the bus had just passed through the middle of the intersection, it was hit on its left side, about even with its front wheels, by the front of an automobile which was being driven westward along Blackstone street. The motorman then brought the bus to a quick stop, in consequence of which, according to the plaintiff's testimony, she was thrown violently forward from the first cross seat on the left side of the bus, where she was sitting; and she struck against the stanchion post in front of her and was injured. She testified also that the bus was going very fast just before it stopped and that its horn had not been sounded.

Another passenger in the bus, who was a witness for the defendant, testified that at the time of the collision he was sitting in the third seat from the front, on the left side, and saw the automobile just before it struck the bus; and that in his opinion the automobile was then going at a moderate rate of speed, as was also the bus, the front of which was then at least half way across the intersection.

According to the motorman's testimony, the bus was going at a moderate rate of speed as it approached the intersection; there was an open lot at the corner on his right, which gave him a clear view in that direction; and, when he was about 25 feet from the corner, he looked in that direction, slowing down the bus, and saw nothing coming. When he was asked: "Will you describe the type of corner on the left? Is it blind?" he answered as follows: "It's a blind corner. A building is up even with the building line. You couldn't see full down until you come to the curb line.

That is the intersection of Plain and Blackstone streets. You would have to roll your coach up to the corner to get a full view."

He also testified that after looking to the right and seeing nothing there he looked to the left, when the front of the bus was 8 or 10 feet back from the corner; that he could not see down Blackstone street all the way, but only about 20 feet and that he saw nothing coming. A reasonable conclusion from this testimony is that he could then see no part of that street which was to the east of a line running from the southwest corner of the corner building to a point on the south line of Blackstone street about 20 feet from the southeast corner of the intersection.

According to his further testimony he then "proceeded across the street cautiously"; and he was one-third across when he saw headlights coming. When asked where they were, he answered: "Practically even with the intersection", meaning, as he explained, the extension of the curb line of Plain street on his left. When he was halfway across, the automobile hit the bus; and he stopped it, when he was "about three-quarters across the road." He further testified that he began to sound the horn, when he was about 35 feet from the intersection, and continued to sound it intermittently until he was about one-third across.

He must have known that an automobile on Blackstone street might be approaching the intersection from his left and, if so, would very likely be moving in the northerly half of that street. Yet, according to his own testimony, after he had reached a point which was about 8 or 10 feet back from the corner and from which he could not see down the northerly half of Blackstone street farther than about 10 feet, he did not look again to the east until the automobile that struck the bus had reached the intersection and was moving west at moderate speed.

As the plaintiff was a passenger in a bus, when it was being operated by the defendant as a common carrier of

passengers, the defendant's duty, by the employee in control of the bus, was to use in its operation the highest degree of care and foresight, consistent with the orderly conduct of the business, with respect to all matters under his control. *Adams* v. *United Electric Rys. Co.*, 46 R. I. 312, 315; *De Nicola* v. *United Electric Rys. Co.*, 55 R. I. 402; *Keefe* v. *United Electric Rys. Co.*, 59 R. I. 423.

In view of the testimony, above summarized, there was, in our judgment, evidence favorable to the plaintiff from which, directly and by drawing fair inferences favorable to her, the jury might reasonably have found that the motorman did not sound the horn, when he was nearing and entering the intersection; that therefore and because he did not look to the east along Blackstone street after entering the intersection and before the automobile had reached the intersection, he had failed to use due care for the protection of the plaintiff; and that she had received her injuries by reason of such failure, while she was in the exercise of reasonable care for her own safety.

Hence we find that the plaintiff's fifth exception, being to the direction of a verdict for the defendant, should be sustained. We see no good reason for considering the other exceptions.

The plaintiff's fifth exception is sustained and the case is remitted to the superior court for a new trial.

*Irving Brodsky,* for plaintiff.

*Earl A. Sweeney, Frank J. McGee,* for defendant.